UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA

v.

TODD MICHAEL GIFFEN

Defendant.

Case No.: 6:18-mj-00236-MK

REVIEW AND RECOMMENDATION

KASUBHAI, Magistrate Judge.

On October 27, 2018, the Government filed a complaint charging Defendant with making threats to a member of Congress via interstate communications and stalking in violation of 18 U.S.C. §§ 875(c) and 2261A. ECF No. 1. Subsequent to Defendant's arrest, this Court held a hearing on the Government's motion for a competency evaluation and on December 5, 2018,

ordered that Defendant be evaluated for competency pursuant to 18 U.S.C. §§ 4241(b) and 4242(a). ECF No. 17. An evidentiary hearing was held on May 23, 2019 wherein the Court received documentary evidence and witness testimony including the examining psychologist's written report and live testimony; Defendant's past treating therapist, Mr. Ron Unger; Defendant's one-time therapist and acquaintance Dr. Seth Farber; and the Defendant, Todd Giffen.

After the record was closed and closing arguments received, the Court provided an oral ruling recommending the Court find the Defendant not competent and that restorative treatment should be ordered. This written Review and Recommendation memorializes the Court's recommendations.

**BACKGROUND**

Defendant was charged by complaint for using his Facebook account www.facebook.com/toddGiffen to send threatening messages through the internet to the Facebook account of a United States Representative ("Victim"). In one message, Defendant stated, "[Victim] I am gunna rape you and your staff for vulnerable person abuse and end your career…". In another message, he claimed the Victim

> could have prevented [his] abuse … Not only was Space Preservation Act of 2001 designed to shut the remote viewing poltergeist weapon down, and promote other countries to shut theirs down … causing me to be placed into this ten year running government murder program. Now they are trying to make me slaughter – the governments fals flag operation is real.

On October 26, 2018, Defendant sent another internet communication from Defendant's Facebook account to the account of Victim stating, in part:

> [Victim] we gunna have a jury trial order ur pathetic puke execution. No jury trial ever gunna let u live. FBI only gunna protect your head from decapitation for so long

> bro. We want your blood pouring and we got the formerly classified files on you raping and covering up killings. Jury ain't gonna back u up. Or the FBI. I own u bitch fucker lol. Go ahead violate my rights as long as u can I gunna kill u. …

**Procedural History**

A report of the competency evaluation was timely prepared and forwarded to the Court on March 11, 2019. In the report, Dr. Low concluded that Defendant suffers from schizophrenia and "exhibited an insufficient understanding of the criminal charges and the related court proceedings."[1] She concluded that Defendant's schizophrenia substantially impairs his present ability to understand the nature and consequences of the court proceedings brought against him, and substantially impairs his ability to assist counsel in his defense.

After the Federal Public Defender services withdrew from representing Defendant, the Court appointed attorney Todd Bofferding. On April 4, 2019, Defendant fired defense counsel Todd Bofferding and requested new counsel. The Court granted Defendant's request. ECF No. 31. The Court and the defense discussed the reasons for granting a substitution of counsel in a proceeding outside of Government counsel's presence. A competency hearing was set for May 22, 2019.

Subsequently, on April 1, 2019, Defendant filed numerous motions before the Ninth Circuit in Case No. 19-70898, including a Pro Se Petition for Writ of Mandamus, which he captioned "Emergency notice of appeal and writ of habeas corpus defendant." ECF No. 32. On April 22, 2019, the Ninth Circuit denied the writ of mandamus without prejudice in light

---

[1] All quotations from Dr. Low are from her March 11 written report following her evaluation. Dr. Low's report was received and marked as Exhibit 2 in the competency hearing.

of the appointment of Ms. Ludwig as his attorney. During another status conference on May 1, 2019, Defendant requested to fire his new attorney, Ms. Ludwig, and that new counsel be appointed. The reasons for this were discussed in a proceeding outside of Government counsel's presence. The court denied the motion. ECF No. 38. A status conference was set for March 20, 2019, and the competency hearing was reset for May 23, 2019.

## LEGAL STANDARD

In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court set forth a two-part standard to determine competency prior to trial. A defendant must "ha[ve] sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and ... ha[ve] a rational as well as factual understanding of the proceedings against him." *Id.* at 402. In addition to evaluating a defendant for competency before trial, the trial judge has a "continuing, affirmative responsibility to ensure that a defendant is not tried while incompetent." *Maxwell v. Roe*, 113 F. App'x 213, 215 (9th Cir. 2004).

In applying this standard, the court may order a psychiatric or psychological examination of the defendant, and the court may commit a defendant for a reasonable period not to exceed thirty days for this examination. 18 U.S.C. §§ 4241(b) and 4247(b). After reviewing the report of the examination and conducting a competency hearing, the court must be satisfied that the defendant is able to understand the proceedings against him and assist counsel in preparing for his defense. *Odle v. Woodford*, 238 F.3d 1084, 1087 (9th Cir. 2001). Even though the defense counsel may have the "best-informed view of the defendant's ability to participate in his defense," defense counsel is "not a trained mental health professional." *Id.* at 1088–89, citing *Medina v. California*, 505 U.S. 437, 450 (1992).

A simple understanding of the surface facts of the legal proceedings is not adequate

to meet the standard of possessing a rational and factual understanding of the proceedings against a defendant—a defendant must have some ability to draw rational conclusions. Competency to "stand trial does not consist merely of passively observing the proceedings. Rather, it requires the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense." *Odle* at 1089.

**Consequences of Incompetency Determination**

While a finding of incompetency is predicated on the existence of a mental disease or defect, the standard for evaluating a defendant's competency to stand trial is not a medical inquiry, but rather a question of constitutional due process. Our judicial system fundamentally requires that a criminal defendant may not be tried unless he is competent. *See United States v. Merriweather*, 921 F. Supp. 2d 1265 (N.D. Ala. 2013); *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Godinez v. Moran*, 509 U.S. 389, 396 (1993); *James v. Singletary*, 957 F.2d 1562, 1569–70 (11th Cir. 1992).

The question of competency is a mixed question of law and fact, which has direct constitutional repercussions. *See United States v. Makris*, 535 F.2d 899 (5th Cir. 1976). If the district court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable (1) to understand the nature and consequences of the proceedings against him or (2) to assist properly in his defense, the court shall declare the defendant incompetent and commit him or her to the custody of the Attorney General. *See United States v. Gastelum-Almeida*, 298 F.3d 1167, 1171 (9th Cir. 2002).

**DISCUSSION**

Dr. Low conducted an extensive forensic examination of Defendant, which included a review of his medical history, psychological tests, and interviews with both Defendant and others. Dr. Low observed that he had a complex and intricately detailed delusional system, which included, among other things, government conspiracies, telekinesis, and mind control by the government. He believes undercover agents are located in the jail, and whistle at him to induce a response. He also believes the NSA uses equipment to remotely stimulate his genitals and to remotely rape people. While he appears to know the basic roles of courtroom personnel, he "believes energy weapons enable judges, prosecutors, and lawyers to have a three way communication in their heads thereby hiding the communication from the record."

Based on her examination of Defendant and the record, Dr. Low diagnosed the Defendant with schizophrenia. Specifically, she noted he reports he has been a victim of government-directed energy weapons since 2007 and that he exhibits a complex delusional system with auditory and somatic hallucinations. She added that he has no insight into his mental illness and refuses to take medication. Dr. Low concluded:

> From the available information, there is ample evidence to indicate the defendant suffers from a mental disorder or disease, Schizophrenia, which would substantially impair his present ability to understand the nature and consequences of court proceedings brought against him, and substantially impair his ability to assist counsel in his defense. His understanding of his court proceedings is colored by his delusions, and his legal defense is based entirely on his delusional beliefs.

This conclusion is supported by continued actions, writings, and comments by defendant. In his appellate motion, Defendant claimed he had no bail hearing, claimed he was denied rights to call witnesses, and stated his "attorney is doing misconduct and unethical practices." ECF No. 32. He pointed to the comments of other "attorney friends" who

confirmed his "attorney's abuse." *Id.* He stated that "Judge Mustafa Kasubhai and Todd Bofferding, defense counsel, unlawfully allowed a government doctor (which was a psychologist) to examine and evaluate me, before a bail hearing." *Id*. He claimed the "US Attorney General and Judge are disrespecting the court system, and civil my rights [sic] according to court procedures, violating the [c]olor of [l]aw." *Id.*

Defendant also reiterated he believes he himself is a victim of government conspiracies. He stated that he is:

> a victim of experimentation without [his] consent … being tortured and abused by a classified program funded by DOJ, Congress, Homeland Security, DOD, Military Branches, Universities. FBI, NSA, other agencies … under the guise of national security. The program consists of hiring, training citizens, to use microwave and directed energy weaponry, milady weaponry, computer systems, satellites, cell towers, cellphones, ground and handheld equipment, used to warrantlessly spy on and target innocent Americas, with radiation effects of maiming, torture, burns, shocks, rape, remote control, mind control of humans, in secret. *Id.*

His attachments to his filings have also given insight into his irrational views of the court proceedings and consequences. In his Motion for Writ filed with this court, he included an email to his attorney and many others including the Seattle Times and Dr. Farber, in which he listed possible defenses. For instance, he claimed that the Government "was spying on me illegally using NSA ESP/remove view before and after my arrest violating my 4th Amendment rights;" the "FBI/US attorney is attempting to use the technique 'planned programmed perjury policy' and 'parallel construction … where they run fake cases through court hiding all the classified surveillance data and intel they have on the case;" and he "was under active torture and mind control at the time of [his] messages" allowing him to raise "the defenses encoded in the Acteus Reus, Minds Rea, [sic] Model Penal Code." *Id*. He also noted that the "judges

and actors involved can do any number of feats and they seek to make it look like innocuous negligence rather than deliberate indifference against individuals." *Id.*

These irrational beliefs undermine his ability to understand the proceedings and assist counsel in his defense. Of note, he has had multiple counsel appointed. His first counsel was Craig Weinerman from the Federal Public Defender's office. He wrote that the "federal public defenders office is similarly controlled because the government has entire discretion who gets hired as a lawyer, so they can exclude any non outsiders, activists, whistleblowers, etc." *Id.* The Federal Public Defenders withdrew from this case. Defendant fired his second counsel, Mr. Bofferding, after various similar delusional accusations were made. His latest counsel, Ms. Ludwig was also a target of his suspicion. Thus, his ability to assist counsel in his defense is significantly undermined by his schizophrenia.

His court demeanor has also been inconsistent and indicative of his erratic behavior and underlying mental problems. According to the minutes of the hearing and Order of detention by the court, Defendant made threats against the magistrate judge personally. The defendant, in addition, to calling the magistrate judge a "faggot fucker," threatened to kill the magistrate judge. He also threatened to sue the magistrate judge. He was anything but calm and restrained and appeared quite menacing and deranged. ECF No. 5. At his hearing before this Court on December 5, 2018, Defendant was unable to comply with repeated warnings to stop being disruptive and interrupting the court. This Court directed his removal from the courtroom. ECF No. 14.

Thus, the totality of the evidence, including the forensic report of Dr. Low, the filings of the Defendant, and the Defendant's behavior in court proceedings, including his testimony at the competency hearing on May 23, 2019, supports the conclusion that he is incompetent to

stand trial at this time.

In *United States v. Ivers*, 2018WL1015531* (D. Or. 2018) (unpublished), the defendant was charged with threating to assault and murder a federal law enforcement officer. The defendant alleged that federal authorities implanted a nonorganic foreign body/object into his brain and had been using the implant to torture him. He filed dozens of motions, letters, and notices with the Court requesting protection from federal government, surgery to have the implant removed and dismissal of the charges against him. He also claimed his attorney Ms. Ludwig and the AUSA in that case were part of a conspiracy against him. In addition, he filed a complaint against the court with the Ninth Circuit. Judge Aiken found the defendant incompetent to proceed to trial. He was then hospitalized for four months. Subsequently, the Court ordered a second forensic report be conducted. The report noted that the defendant represented that he now realized how farfetched his beliefs had been and knew the government was not against him and that he did not have an implant in his brain. However, a subsequent letter to the court noted that he continued to believe he was a target of the government conspiracy. The Court found the defendant competent to stand trial noting that the expert concluded that the defendant continued to have psychosis/schizophrenia but believed the defendant met the legal standard for competency notwithstanding his persistent symptoms. Judge Aiken concluded that the defendant's hospitalization appeared to help him achieve competency in part by dissipating the lingering effects of methamphetamine use that greatly exacerbated his symptoms noting that the expert felt the defendant's mental state would likely remain stable if he remains abstinent from methamphetamine use.

Here, Giffen suffers from similar delusions as Ivers. His belief that he is a victim of

a Government conspiracy reflects an underlying psychosis/schizophrenia. As the Court found in *Ivers*, such views justify a finding of incompetency. But unlike the second competency hearing in *Ivers*, Defendant has not undergone any treatment nor is he alleged to be involved in drug use that contributes to, let alone exacerbates, his symptoms. Most significantly, in this case Dr. Low has persuasively opined that his schizophrenia renders him incompetent. And, as noted, the evidence strongly supports Dr. Low's views that Giffen's beliefs reflect a complex and intricately detailed delusional system caused by schizophrenia.

The Court's inquiry is whether his mental illness prevents him from having a rational understanding of the legal process and charges and from being able to assist his attorney in his defense. In *United States v. Merriweather*, a district court for the Northern District of Alabama considered Defendant counsel's claim that his client suffered from schizophrenia, which rendered him incompetent. The court noted that while the law is settled as to what the proper standard is, at least one prong of the standard remains poorly defined. The Supreme Court has not yet fully explained what a "rational understanding" entails, much less whether "rational understanding" has the same meaning in the first prong as it does in the second prong. It noted that some cases address the issue without providing a definition for the term, while the most extensive analysis appears in the Tenth Circuit's decision in *Lafferty v. Cook*, 949 F.2d 1546, 1549–51 (10th Cir. 1991). In *Lafferty*, the Tenth Circuit deduced that the Supreme Court would consider "a defendant [to lack] the requisite rational understanding if his mental condition precludes him from perceiving accurately, interpreting, and/or responding appropriately to the world around him." *Id.* at 1551. The Tenth Circuit explained that it would use "a sufficient contact with reality as the touchstone for ascertaining the

existence of a rational understanding." *Id.*

A defendant who has a sufficient contact with reality may know facts, such as the day of the week or the name of the current President, but the plain language of the Supreme Court's holding in *Dusky* indicates that competency requires something more. It is not enough to find that the defendant is oriented to time and place and has some recollection of events. To give the *Dusky* standard effect, the term "rational understanding" must mean something different from a mere "factual understanding." *Id.*

Defendant's actions, statements, writings, and testimony reflect this lack of rational understanding. He views himself as a victim of an unfounded and fantastic government conspiracy that includes the court system, court personnel, and defense counsel. His understanding of the legal process and his legal defense rely on these delusional beliefs. Thus, his mental illness deprives the Defendant of the ability to rationally and factually understand the proceedings against him and to consult with his lawyer with a reasonable degree of rational understanding.

## RECOMMENDATION

This court recommends the Defendant be found incompetent and that restorative treatment be ordered. The Defendant suffers from schizophrenia and due to his mental illness does not, at this time, have a rational understanding of the legal process and the charges against him, and is unable to adequately assist his legal counsel in his defense.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order. The parties may file specific written objections within fourteen (14) days from the date

of service of a copy of this recommendation. If an objection is filed, any response to the objection is due within fourteen (14) days from the date of the objection. *See* Fed. R. Civ. P. 72, 6. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this 28th day of May 2019.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge