IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 6:18-mj-00236-MK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TODD MICHAEL GIFFEN**, | |
| Defendant. | |

**MCSHANE, Judge:**

The Government seeks, by way of a *Sell*[1] hearing, a court order allowing Defendant Todd Michael Giffen to be involuntarily medicated by BOP medical staff in order to restore Mr. Giffen's competency. For the reasons below, the Court authorizes the first treatment plan outlined in Dr. Graddy's report and orders that Mr. Giffen be involuntarily medicated. Mr. Giffen's Motions to Dismiss, ECF Nos. 20 and 82, are DENIED.

## BACKGROUND

After allegedly sending two threatening messages to a government official's Facebook account, Mr. Giffen was charged in October 2018 for making threats via interstate

---

[1] *Sell v. United States*, 539 U.S. 166, 178 (2003).

1 – OPINION AND ORDER

communications and stalking in violation of 18 U.S.C. §§ 875(c) and 2261A. Gov.'s Mot. for Hr'g 2, ECF No. 118; Def.'s Resp. 2, ECF No. 122. This Court adopted Judge Kasubhai's findings and recommendations regarding Mr. Giffen's lack of competency on May 28, 2019. ECF No. 75. For reasons that have never been clear to the Court, Mr. Giffen did not arrive at the Federal Medical Center ("FMC") in Butner, North Carolina for competency restoration until October 16, 2019. *Id.*

On February 7, 2020, FMC Butner reported that Mr. Giffen remained symptomatic, was refusing treatment, and would be unlikely to regain competency without antipsychotic medication. 2/4/2020 Competency Study, Ex. 002, at 5–6; Gov.'s Mot. 3. FMC Butner crafted an individualized treatment plan that recommends involuntary medication with aripiprazole alone or with aripiprazole and olanzapine. 3/18/2020 Forensic Addendum, Ex. 003, at 16.

Mr. Giffen has spent his adult life in and out of treatment centers. He has been diagnosed with schizophrenia and borderline personality disorder. Competency Study at 2, 4. His symptoms of schizophrenia include persecutory delusions and associated agitation. *Id*. at 4. The indicators of borderline personality disorder that Mr. Giffen exhibits include impulsivity, emotional reactivity, difficulty controlling anger, and suicidal gestures. *Id*. He has been hospitalized at Oregon State Hospital at least six times since 2004, with additional brief hospitalizations at Peace Medical Center. *Id*. at 2. He underwent competency evaluations related to state criminal proceedings in 2004, 2011, 2012, and 2013. Forensic Addendum at 3-5. Each time he was treated and his competency was restored. *Id*. Following treatment, Mr. Giffen's mood stabilized, he became calmer, and his self-destructive behavior abated, though his persecutory delusions persisted. *Id.*; Cloninger Opinion, Ex. 102, at 3, 16.

In 2004, Mr. Giffen was hospitalized for five and a half months after threatening to kill his grandmother while he was armed with a knife. Forensic Addendum at 3. While hospitalized, Mr. Giffen was physically aggressive and exhibited self-harm behavior. *Id*. He was medicated involuntarily and treated with olanzapine. *Id*. Following treatment, Mr. Giffen was found competent to stand trial. *Id*.

In November 2005, Mr. Giffen was hospitalized after he ingested his grandparents' medication in front of them. *Id*. He spent nearly five years in the hospital and was civilly committed on May 11, 2009. *Id*. During this hospitalization, Mr. Giffen assaulted staff and others multiple times. *Id*. When he was first admitted, Mr. Giffen was taking aripiprazole and olanzapine. Cloninger Opinion at 10. While he often refused psychiatric medication, with medication, including aripiprazole, his mental state improved. Forensic Addendum at 3.

Mr. Giffen was hospitalized again on April 22, 2011, after assaulting his grandfather and violently resisting arrest. *Id*. at 4. During this hospitalization, Mr. Giffen assaulted staff multiple times and threatened the psychiatrist. *Id*. He was first treated with olanzapine involuntarily and his symptoms improved. *Id*. At Mr. Giffen's request, his treatment was changed to aripiprazole. *Id*. His competency was restored and he was released on June 4, 2012. *Id*. Following his release, Mr. Giffen refused medication in jail and relapsed, leading to another hospitalization on October 2, 2012. *Id*. He "came very close to assaulting staff." *Id*. After forced treatment with aripiprazole and olanzapine, Mr. Giffen's competency was restored and he was released January 3, 2013. *Id*.

When Mr. Giffen again stopped taking his medication in jail, he was hospitalized briefly from May 23, 2012 to June 6, 2013. *Id*. at 5. He was evaluated for civil commitment at the time

3 – OPINION AND ORDER

but did not meet the criteria. *Id*. While Mr. Giffen did yell at the staff on one occasion, on the whole he was self-isolative and not violent. *Id*.

Finally, Mr. Giffen was hospitalized on October 3, 2013 after punching his grandfather. *Id*. This time he was restored to competency without medication and was released on November 26, 2013. *Id*.

Mr. Giffen has been at FMC Butner since October 16, 2019. Forensic Addendum at 13. He was evaluated by a psychiatrist on November 13, 2019, but refused any follow up care by a primary care provider or nurse. *Id*. He has refused to attend Competency Restoration Group or other group activities. *Id*. He has received two incident reports, one for "refusing to obey and order and insolence towards a staff member" and one for "use of the mail for abuses other than criminal activity." On the other hand, he has been nonviolent and remains primarily self-isolative. *Id*.

## STANDARDS

"[A]n individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)). But there are times when the government may involuntarily administer medication to a mentally ill defendant solely for the purpose of rendering them competent to stand trial. *Id.* at 179. To do so, the government must establish four factors by clear and convincing evidence: (1) "*important* governmental interests are at stake," (2) "involuntary medication will *significantly further* those concomitant state interests," (3) "involuntary medication is *necessary* to further those interests," and (4) "administration of the drugs is *medically appropriate*." *Id.* at 179–81; *United States v. Ruiz-*

*Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010). The Ninth Circuit disfavors *Sell* orders except in rare, "highly-specific factual and medical circumstances." *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1136–37 (9th Cir. 2005). A *Sell* order should establish limitations on treatment types, duration, and maximum dosages while granting physicians flexibility to respond to changes in the defendant's condition. *United States v. Hernandez-Vasquez*, 513 F.3d 908, 916–17 (9th Cir. 2008).

## DISCUSSION

### I. Important Governmental Interest

Bringing a defendant accused of a serious crime to a fair trial serves an important governmental interest. *Sell*, 539 U.S. at 179–80. "The likely guideline range is the appropriate starting point for the analysis of a crime's seriousness." *Hernandez-Vasquez*, 513 F.3d at 919. Then, the court should consider case-specific facts or special circumstances. *Ruiz-Gaxiola*, 623 F.3d at 694.

While the statutory maximum for Mr. Giffen's charge is five years, his advisory guideline range is 27-33 months.[2] Gov.'s Motion 5, Def's Resp. 1. The Ninth Circuit has found similar charges involving threats, in a similar guideline range, were sufficiently serious to meet this first factor. *See, e.g., United States v. Onuoha*, 820 F.3d 1049, 1055 (9th Cir. 2016); *United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014).

Special circumstances, such as "the possibility that the defendant has already been confined for a significant amount of time," may lessen the importance of the government's

---

[2] Including a three-point downward variance for acceptance of responsibility, Defense Counsel posits a total offense level 17 and criminal history category II. Def.'s Response 1.

interest in prosecution. *Sell*, 539 U.S. at 180. Mr. Giffen has already been in custody for 27 months, the low end of his likely guideline range. But even if a defendant has spent a significant amount of time in custody, an important governmental interest may still exist if the defendant's sentence can include supervised release. *Onuoha*, 820 F.3d at 1056; *Gillenwater*, 749 F.3d at 1101–02. Here, as in *Onuoha* and *Gillenwater*, the government has a significant interest in Mr. Giffen's supervision in the community to ensure that he does not engage in violence or threaten violence when he is released. The government has an important interest in ensuring that when Mr. Giffen returns to the community he is supported with the appropriate resources.

The possibility of civil commitment is another "special circumstance" that may lessen the importance of the government's interest. However, because Mr. Giffen is not currently a danger to himself or others, it is unlikely that he would meet the criteria for civil commitment. *Cf. Ruiz-Gaxiola*, 623 F.3d at 694 ("Because nothing in the record suggests that Ruiz is subject to civil commitment as a danger to himself or others, however, that possibility is very slight here, if indeed it exists at all."). The Government has shown that important governmental interests are at stake.

## II.     Furthering Governmental Interest

To prove that involuntary medication will further those governmental interests, the government must show that the medication is both (1) "substantially likely to render the defendant competent to stand trial" and (2) "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Sell*, 539 U.S. at 181. This factor relies on the medical

experts' reports and the defendant's own medical history of taking antipsychotic medications. *Gillenwater*, 749 F.3d at 1102–03; *Ruiz-Gaxiola*, 623 F.3d at 690, 695–701.

Studies have shown that the majority of defendants who are involuntarily medicated with antipsychotic medication are restored to competency. FMC Butner Sell Appendix 2020, Ex. 004, at 2. In his proposed treatment plan, Dr. Graddy recommends that Mr. Giffen be treated with aripiprazole. Aripiprazole has been shown to have "substantial beneficial effects" in some patients with schizophrenia. Cloninger Opinion at 25. Aripiprazole has also been effective in the past in restoring Mr. Giffen's competency, both in 2012 and 2013. Because of this, it is substantially likely that treatment with aripiprazole will render Mr. Giffen competent to stand trial.

Similarly, when Mr, Giffen has taken aripiprazole in the past, he has experienced minor side effects, but none that would interfere with his ability to assist his defense counsel. In the past, medication has stabilized his mood and allowed him to focus on his defense. Involuntary medication will further the Government's interest.

### III. <u>Necessity</u>

Involuntary medication is necessary only when "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell*, 539 U.S. at 181. A defendant's refusal to recognize their mental condition, resistance to treatment, and conspiratorial delusions often render the alternative treatment of voluntary psychotherapy ineffective. *Gillenwater*, 749 F.3d at 1104; *Ruiz-Gaxiola*, 623 F.3d at 702–03. "There is no convincing evidence in the published literature that patients with chronic schizophrenia or related psychotic disorders significantly respond to psychotherapy alone." Sell Appendix at 3. Dr. Graddy and Dr. Cloninger

both testified that for patients with schizophrenia, psychotherapy alone is rarely, if ever, effective. While it is true that Mr. Giffen was able to regain competency without the use of medication during one of his many hospitalizations, he has currently been at FMC Butner for more than a year and has made no progress. Given Mr. Giffen's current condition, there are no alternative less intrusive treatments that are likely to achieve substantially the same results.

IV.     **Medically Appropriate**

Finally, to medicate a defendant involuntarily, the treatment must be "medically appropriate, i.e. in the patient's best medical interest in light of his medical condition." *Sell*, 529 U.S. at 181. Recognizing the liberty interests at stake, the court "must consider the long-term medical interest of the individual rather than the short-term institutional interests of the justice system." *Ruiz-Gaxiola*, 623 F.3d at 703. This factor relies on expert medical testimony to balance the potential harms and benefits of the recommended treatment against the seriousness of the condition. *Gillenwater*, 749 F.3d at 1104–05.

Antipsychotic medication "is considered an essential element in the treatment of [schizophrenia]." Sell Appendix at 3. Dr. Graddy testified that aripiprazole is the least intrusive antipsychotic medication, with a low risk of severe side effects. Dr. Graddy's proposed treatment plan is conservative, aiming for maximum effectiveness with the minimum dosage, in order to treat Mr. Giffen with the least risk of side effects. Mr. Giffen will be closely monitored for serious side effects and treatment can be adjusted to mitigate any mild side effects he experiences. Aripiprazole has been effective in the past at treating Mr. Giffen's symptoms and reducing his distress with minimal side effects.

8 – OPINION AND ORDER

While Mr. Giffen's guardian ad litem expressed concerns that Mr. Giffen may incorporate forced medication in his delusional belief system and remain unable to assist his counsel in his criminal case, Mr. Giffen's medical history shows that medication, even when forced upon him, has been effective at reducing Mr. Giffen's symptoms and has allowed him to assist counsel in his defense. Although Mr. Giffen's delusions persist even when medicated, there is no evidence that medication has made his delusions worse. Treatment with aripiprazole is in Mr. Giffen's best medical interest.

### V. **Authorized Treatment**

The Court finds that each of the four *Sell* factors are met and authorizes involuntary antipsychotic medication for Mr. Giffen. Dr. Graddy provided the Court with two proposed individualized treatment plans, one allowing him minimal discretion in the treatment, and the other allowing for more discretion in treatment. The Court authorizes treatment under the first option; Mr. Giffen may be treated with aripiprazole.

Mr. Giffen must be provided with a copy of this order, potential side effects of treatment must be explained to him, and BOP treatment personnel must attempt to obtain Mr. Giffen's cooperation in the treatment plan. Mr. Giffen must first be offered aripiprazole orally, dose titrated for maximum benefit and minimum side effects to a maximum dose of 30mg. If Mr. Giffen refuses oral medication, he may be treated with long-acting intramuscular injections of aripiprazole, dose titrated for maximum benefit and minimum side effects to a maximum dose of 400mg per month. If Mr. Giffen experiences side effects, BOP treatment personnel may add adjunctive medications to treat the side effects and shall consider reducing the dose of aripiprazole.

9 – OPINION AND ORDER

BOP treatment personnel are also authorized to perform any physical and laboratory assessments and monitoring which are clinically indicated to monitor for medication side effects, even over Mr. Giffen's objections. This includes any monitoring necessary to ensure that Mr. Giffen is ingesting the medication, should he agree to take the medication orally.

BOP treatment personnel are authorized to treat Mr. Giffen for the full four-month period under Section 4241(d). Further, should Mr. Giffen be found competent by the end of the four-month period, the Court orders Mr. Giffen's continued treatment with aripiprazole to maintain his competency through all pretrial and trial proceedings.

Because this has drawn out so long, the Court requests monthly status reports on Mr. Giffen's progress. The Court further orders that Mr. Giffen return to Oregon within five months, for further proceedings if he should be found competent, or for dismissal if not.

## **CONCLUSION**

For these reasons, the Court orders that Mr. Giffen be involuntarily medicated. Defendant's Motions to Dismiss, ECF Nos. 20 and 82, are DENIED.

IT IS SO ORDERED.

DATED this 25th day of January 2021.

  s/Michael J. McShane
**Michael J. McShane**
**United States District Judge**